835 So.2d 1232 (2003)
Azerkhan R. ALIYEV, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-574.
District Court of Appeal of Florida, Fourth District.
January 29, 2003.
*1233 Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Charlie Crist, Attorney General, Tallahassee, and August A. Bonavita, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
We affirm Azer Khan Aliyev's conviction and sentence for the offense of welfare fraud. We address two issues: whether there was fundamental error in instructing the jury, and whether Aliyev's due process rights were violated in sentencing.
Aliyev, an immigrant from Azerbaijan, proceeded to trial on the theory that because his native language is Russian, he did not understand the requirement that he report a change in his employment status to the Department of Children and Families (DCF).
There was testimony that Phyllis Gibbs of DCF met with Aliyev in May 1999, to ascertain whether he qualified for benefits and conducted the interview in English, without need for a Russian interpreter. She discussed with Aliyev the conditions of his continued assistance from DCF and had him sign a "rights and responsibilities" form reflecting his understanding of these conditions. Aliyev told Gibbs he was unemployed. Gibbs informed him that he was required to notify DCF within ten days if his employment status changed.
The following month, he was hired as a security officer. A representative of his employer testified to Aliyev's earnings and hours worked. Subsequently, a few months later, Aliyev was again interviewed by DCF and signed another form advising that there could be criminal penalties for giving false information or hiding information.
Without objection, the court instructed the jury that the state had to prove (1) that Aliyev knowingly failed to disclose a change in circumstances in order to obtain or continue to receive public assistance to which he was not entitled or in an amount larger than that to which he was entitled; and (2) that the aid or benefits came from a state or federally funded assistance program.
At sentencing, defense counsel explained to the court that he felt obligated to take Aliyev's case to trial because Aliyev could be deported if convicted because the crime involves "moral turpitude." After hearing from Aliyev's family, the court announced:
Okay, The Court has sat through the entire trial and I'm familiar already with Mr. Aliyev. And the circumstances, and it's a difficult position because he does score total sentence points of four points and no priors, and I understand the situation that he was in terms of his what he perceived as his inability to plea this case out because of his circumstances with immigration.
On the other handled [sic], you know, Mr. Aliyev is in the country for a short *1234 period of time, but by some strange coincidence, he keeps finding himself in trouble.[1] I don't believe that his English was as bad as he states it to be to the extent that he did not understand the forms, but forget about what I think, the jury didn't believe it. The jury found him guilty.
Even during the trial yesterday, some things that the Court was disturbed about was that Mr. Aliyev didn't take responsibility, he stillwhen one of the witnesses was testifying, kept saying she never even met me to the lady that was the person from the Department of Families and Children [sic].
The court has to fashion some type of punishment for the crime based on all the circumstances. And although I do not believe in any way whatsoever that a fair sentence is five years for this case, the Court is adjudicating you, Mr. Aliyev and the Court is sentencing you to six months Broward County Jail followed by two years of probation.
Aliyev claims that the jury instruction omitted an element of the offense as to the value of the wrongful benefits and that the trial court imposed an unfair sentence upon him in retaliation for his decision to go to trial.
In regard to the jury instruction, Aliyev did not object to the instruction and, on the facts of this case, we cannot conclude that it was fundamental error to fail to instruct the jury that the state had to prove that the value of the assistance illegally obtained was $200 or more. Failure to give a jury instruction constitutes fundamental error if it concerns an essential element of the crime and that element is disputed at trial. See State v. Delva, 575 So.2d 643 (Fla.1991). Here, however, the value of the benefits was not in dispute.
Aliyev does not question the value of the DCF assistance fraudulently obtained or that the amount was proved; instead, he contends that the state failed to prove that he knowingly misled DCF. In closing, defense counsel told the jury, "[t]his case is about one thing, one thing only. Intent." In cross-examining DCF's supervisor of claims, defense counsel summarized the facts by stating, "what we're at trial here for is that [Aliyev] was compensated $823.00 too much money."[2] The value of the benefits was not disputed. As such, failure to instruct on this element did not "reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Id. at 644-45. See also F.B. v. State, 816 So.2d 699, 700 (Fla. 4th DCA 2002)(holding that state's failure to prove value of stolen items was not fundamental error requiring reversal of defendant's conviction for burglary and first-degree petit larceny).
With regard to the validity of the sentence imposed, clearly the trial court could not impose a harsher sentence upon Aliyev because he exercised his constitutional right to a jury trial, maintained his innocence, or failed to show remorse. E.g. Lyons v. State, 730 So.2d 833 (Fla. 4th DCA 1999)(reversing sentence where court imposed 20-year sentence after defendant maintained his innocence, refusing to tell court where stolen property was); Johnson v. State, 679 So.2d 831, 832-33 (Fla. 1st DCA 1996)(reversing sentence where court stated: "I will be very candid, what I see is an absolutely indefensible case by someone who has ... put us through going through a whole trial, I guess so he could talk about it. When there was an offer on *1235 the table he decided to turn down. Now it's time to pay the piper."); Gallucci v. State, 371 So.2d 148 (Fla. 4th DCA 1979)(reversing sentence where court stated: "[t]he defendant has got to face the music once he goes to trial ... And if the appellate court doesn't like what I am saying, they can very well reverse me, but it is not my intention to try a case and then have the defendant come in and expect to be placed on probation, Unless it is very, very odd and weird circumstances. You can call it punishment for going to trial, if you want to. I don't look at it that way").
Here, however, and unlike the cases cited above, the court did not factor in Aliyev's decision to go to trial. In fact, the court carefully worded its response to defense counsel's comment that Aliyev might not have gone to trial had it not been for certain immigration consequences that would result from a guilty plea: "I understand... what [Aliyev] perceived as his inability to plea this case out...."
As further distinguished from Lyons, Johnson, and Gallucci, the court's admitted irritation with Aliyev's failure to take responsibility appears to be less a comment on Aliyev's assertion of innocence and more a criticism of his courtroom behavior. At one point during the testimony of a DCF specialist who said she met with Aliyev, he loudly proclaimed, "[s]he never met me." In this context, however, it is unclear from the record that the court was referring to Aliyev's failure to take responsibility for committing the fraud or for his attempt to interject his side of the story without taking the stand.
In any event, the court clearly did not believe that Aliyev never met with the DCF specialist or that his English was as poor as he and his family claimed. Also, given the short period of time Aliyev had been in this country, the court was unimpressed with his lack of a prior record. We find no error in the court's assessment of the case.
The court's comments, on their face, do not give us reason for concern. This is especially so, in light of the sentence the court imposed. Although the state requested that the court impose a state prison sentence of five years, Aliyev received a probation sentence with some county jail time.
Therefore, we cannot conclude on this record that Aliyev was punished for maintaining his innocence. Accordingly, we affirm his conviction and sentence.
GROSS, J. and STERN, KENNETH, Associate Judge, concur.
NOTES
[1] Aliyev was previously tried and acquitted of aggravated battery before the same judge.
[2] This is only part of what was owed. The total was $2,600.