FIRST DISTRICT COURT OF APPEAL
STATE OF FLORIDA

_____

No. 1D17-0165
_____

ALVIN DAVIS,

  Appellant,

  v.

STATE OF FLORIDA,

  Appellee.

_____

On appeal from the Circuit Court for Leon County.
Robert R. Wheeler, Judge.

April 25, 2019

**ON HEARING EN BANC**

WINSOR, J.

As the Florida Supreme Court explained in its 1990 *Holton v. State* decision, "[a] defendant has the right to maintain his or her innocence and have a trial by jury." 573 So. 2d 284, 292 (Fla. 1990). And "because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt," a defendant's decision to not plead guilty "cannot be used against him or her during any stage of the proceedings." *Id.* In short, the court concluded, "[a] trial court violates due process by using a protestation of innocence against a defendant." *Id.* (citing U.S. Const. amend. V; Art. I, § 22, Fla. Const.).

Starting from these fundamental propositions, Florida's district courts have developed new, different rules. "Over time, case law has expanded the rule in *Holton* and applied it in cases which indicate that it is generally improper for the sentencing court to consider the defendant's lack of remorse." *Rankin v. State*, 174 So. 3d 1092, 1096-97 (Fla. 4th DCA 2015) (marks omitted) (quoting *Peters v. State*, 128 So. 3d 832, 847 (Fla. 4th DCA 2013)). For its part, this court has explicitly held that "[a] lack of remorse or a failure to accept responsibility *may not be considered* by the trial court when fashioning an appropriate sentence." *Dumas v. State*, 134 So. 3d 1048, 1048 (Fla. 1st DCA 2013) (emphasis added) (citing *Green v. State*, 84 So. 3d 1169, 1171 (Fla. 3d DCA 2012) (relying on *Holton*)); *see also Wood v. State*, 148 So. 3d 557, 557 (Fla. 1st DCA 2014) ("Our precedents make clear that a sentence conditioned, even in part, on a defendant's lack of remorse and claim of innocence violates due process and warrants remand for resentencing before a new judge." (marks omitted)); *Jackson v. State*, 39 So. 3d 427, 428 (Fla. 1st DCA 2010) (reversing sentence after sentencing judge said "since you show no remorse or regret for any of your actions I'm going to sentence you to 25 years"); *Ritter v. State*, 885 So. 2d 413, 414 (Fla. 1st DCA 2004) (holding that reliance on lack of remorse violates due process); *K.Y.L. v. State*, 685 So. 2d 1380, 1381 (Fla. 1st DCA 1997) (citing *Holton*) ("[L]ack of contrition or remorse is a constitutionally impermissible consideration in imposing sentence."), *disapproved of on other grounds by State v. J.P.C.*, 731 So. 2d 1255 (Fla. 1999). Decisions from other districts have said the same thing. *See, e.g.*, *Chiong-Cortes v. State*, 260 So. 3d 1154, 1154 (Fla. 3d DCA 2018) ("[C]omments indicating the trial judge considered Appellant's lack of remorse in fashioning the sentence constitute reversible error."); *Davis v. State,* 149 So. 3d 1158, 1160 (Fla. 4th DCA 2014) ("A trial court's consideration of a defendant's lack of remorse in imposing its sentence is fundamental error."); *Whitmore v. State*, 27 So. 3d 168, 169 (Fla. 4th DCA 2010) ("[T]he trial court's reliance on these factors [lack of remorse and failure to accept responsibility] violated [defendant's] due process rights and constituted fundamental error."). *But see St. Val v. State*, 958 So. 2d 1146, 1146 (Fla. 4th DCA 2007) ("We reject appellant's contention that a sentencing judge may never take a defendant's lack of remorse into consideration when imposing sentence.").

We granted en banc review to consider whether these cases state a correct rule of law, and we conclude they do not. We hold that a trial judge does not violate a defendant's due process rights by merely considering the defendant's lack of remorse or refusal to accept responsibility. We hold that lack of remorse and refusal to accept responsibility can be valid sentencing considerations when sentencing within the statutory range, and we recede from our cases that suggest otherwise.

I.

A jury convicted Davis of possessing a firearm as a convicted felon. According to trial testimony, a teenager was driving a car with Davis as a passenger. Officers stopped the car and found drugs, drug paraphernalia, and a gun. The teenage driver testified that he did not know a gun was in the car until right before the traffic stop, when Davis pulled out the gun, wrapped it in an orange shirt, and stuffed it under the seat.

The teen's testimony was essential, and the defense suggested it was also untrue. The defense theorized that officers conditioned the teen's release on his implicating Davis. The defense noted that although the teen told officers the drugs and paraphernalia were his, officers opted to cite him, not arrest him. In its rebuttal closing, the State referenced a dashcam video and argued that "if that audio had recorded at any point the officer saying, hey, if you point your finger at this guy, we'll give you a juvenile citation and let you go home-- . . . ." Defense counsel interrupted and objected to "burden shifting," and the trial court concluded the State's argument was improper because the parties stipulated to admitting the video without audio. The State, resuming its rebuttal argument, told the jury that "[i]f there had been some special deal cooked up, I think we would have heard about it." The jury convicted.

Davis moved for a new trial. After a hearing, the court denied the motion, and the case proceeded to sentencing. The presentence investigation report noted Davis's "extensive criminal history," which included "numerous violent offenses." It also concluded that Davis "appears to have a history of gang related activity" and "apparently continues to be a threat to the safety of the

3

community." The PSI report recommended the maximum sentence.[1]

At the sentencing hearing, Davis declared he was innocent. He insisted that the gun was not his, that the jury convicted him without sufficient evidence, and that his counsel performed inadequately. After Davis spoke, the court pronounced sentence. In doing so, the court recounted Davis's significant criminal history and told Davis "you still fail to take any responsibility for your actions." The court concluded that, "considering your history here, your failure to take any responsibility, the nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years . . . , which is the statutory maximum."

The principal issue we now face is whether the court's observation that Davis "still fail[s] to take any responsibility for [his] actions" means the court violated Davis's due process rights.

## II.

Although we granted en banc review to consider the sentencing issue, Davis also argues that the court erred in denying his new-trial motion. We address this argument first because it would, if successful, moot the sentencing issue.

"A trial court's denial of a motion for a new trial is reviewed under an abuse of discretion standard. In order to demonstrate abuse, the nonprevailing party must establish that no reasonable person would take the view adopted by the trial court." *Stephens v. State*, 787 So. 2d 747, 754 (Fla. 2001). Here, Davis argues that the prosecutor's comments were improper burden shifting, warranting a new trial. After a hearing, the trial court offered several cogent reasons for denying the new-trial motion. First, the court concluded that defense counsel opened the door, both by cross-examining the officer about the existence of an audio

---

[1] A PSI's purpose is to provide information to help the court impose an appropriate sentence. *See* Fla. R. Crim P. 3.712(a). In this case, despite moving to habitualize Davis and advising the court that it had done so, the State did not pursue habitualization at sentencing.

4

recording and by suggesting in closing that there was a deal for leniency with the teen driver. Second, the court found that the comment was brief, that counsel stopped almost immediately for a sidebar, and that the comment likely did not influence the jury. Third, the court concluded that any error would have been harmless because of, among other things, the fact that Davis's DNA was on the orange shirt in which the gun was wrapped.

We find no abuse of discretion in the trial court's order. We therefore affirm the conviction and turn now to the sentencing issue.

## III.

As federal and state courts have frequently said, "[i]t is well established that a sentencing judge may consider lack of remorse when imposing a sentence." *United States v. Johnson*, 903 F.2d 1084, 1090 (7th Cir. 1990); *accord State v. Herrera*, 429 P.3d 149, 168 (Idaho 2018) ("A trial court does not err by considering a defendant's lack of remorse at sentencing . . . ."); *People v. Mulero*, 680 N.E.2d 1329, 1337 (Ill. 1997) ("It is well settled that a defendant's remorse or lack thereof is a proper subject for consideration at sentencing.").[2]

---

[2] These cases are not outliers. *See, e.g., United States v. Smith*, 424 F.3d 992, 1016 (9th Cir. 2005) (explaining that lack of remorse is a "legitimate sentencing factor[]"); *United States v. Ford*, 840 F.2d 460, 467 (7th Cir. 1988) ("[I]n determining the appropriate sentence for a defendant, one relevant factor for the district court to consider is the defendant's refusal to recognize his offense."); *United States v. Bangert*, 645 F.2d 1297, 1308-09 (8th Cir. 1981) (holding it permissible to consider lack of remorse in sentencing); *Isaacs v. State*, 386 S.E.2d 316, 323 (Ga. 1989) ("[T]he defendant's remorse or lack thereof is a permissible area of inquiry during sentencing."); *Deane v. State*, 759 N.E.2d 201, 205 (Ind. 2001) ("Lack of remorse is a proper factor to consider in imposing a sentence."); *Owens v. State*, 544 N.E.2d 1375, 1378 (Ind. 1989) ("There is no general prohibition against using lack of remorse as a sentencing factor."); *State v. Swint*, 352 P.3d 1014, 1029 (Kan. 2015) (noting court had "approved lack of remorse as appropriate for consideration in criminal sentences"); *Commonwealth of Pa. v.*

In fact, Florida sentencing statutes explicitly authorize consideration of remorse and responsibility. A trial court may apply "[a] downward departure from the lowest permissible sentence" if the offense was an isolated incident done in an unsophisticated way and was one "for which the defendant has shown remorse." § 921.0026(1), (2)(j), Fla. Stat. (2018). Even before the Legislature enacted that provision, the Florida Supreme Court approved downward departures based on remorse. *State v. Sachs*, 526 So. 2d 48, 51 (Fla. 1988) (including "remorse" among the "valid factors considered by the trial court"). The federal sentencing guidelines similarly consider "acceptance of responsibility" as a legitimate and appropriate factor. *See, e.g.*, United States Sentencing Guidelines Manual § 3E1.1(a) (U.S. Sentencing Comm'n 2018) ("If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels."); *id.* § 3E1.1(a) cmt. ("[A] defendant who clearly demonstrates acceptance of responsibility for his offense . . . is appropriately given a lower offense level than a defendant who has not demonstrated acceptance of responsibility."). In short, courts

---

*Miller*, 724 A.2d 895, 902 (Pa. 1999) ("[T]he demeanor of a convicted defendant, including his apparent lack of remorse, is a proper consideration in fixing the sentence for a non-capital offense."); *State v. Pico*, 914 N.W.2d 95, 114 (Wis. 2018) ("The circuit court's operative statement on this subject was simply 'I will consider whether or not you demonstrate remorse as part of my sentence.' Taken at face value, that is an entirely appropriate and unremarkable statement—remorse *is* a proper factor to consider in developing a sentence."). Although Judge Makar's dissent suggests this is some "federal rule" with a "hodgepodge" of state courts in agreement, he cites law review articles (albeit for other purposes) that confirm the consistency of these decisions. *See* Caleb J. Fountain, Silence and Remorselessness, 81 ALB. L. REV. 267, 288-89 (2018) ("That a finding of remorselessness is a legal basis upon which a defendant's punishment may be increased is nearly beyond dispute."); Rocksheng Zhong, MD, MHS, Judging Remorse, 39 N.Y.U. REV. L. & SOC. CHANGE 133, 137 (2015) ("The consideration of remorse or its absence as a mitigating or aggravating factor during criminal sentencing is accepted in both federal and state courts.").

and legislatures throughout the country—including the Florida Supreme Court and the Florida Legislature—have recognized that remorse can be a proper sentencing factor.

The commonsense approach of considering a defendant's remorse—or willingness to take responsibility—fits with the Legislature's command that each sentence be not only commensurate with the severity of the offense but also fashioned in light of "the circumstances surrounding" it. § 921.002(1)(c), Fla. Stat. The United States Supreme Court long ago recognized that "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential" to a judge's selection of an appropriate sentence. *Williams v. People of State of N.Y.*, 337 U.S. 241, 247 (1949); *see also United States v. Grayson*, 438 U.S. 41, 50 (1978) (describing as a "fundamental sentencing principle" that "'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come'" (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972))). Florida courts thus consider a wide array of factors in sentencing. *See, e.g., Noel v. State*, 191 So. 3d 370, 379 (Fla. 2016) ("A trial court may consider a defendant's financial resources at sentencing."); *Hall v. State*, 248 So. 3d 1227, 1232 (Fla. 1st DCA 2018) (noting that Criminal Punishment Code allows consideration of "a juvenile's youth and its attendant characteristics"); *Charles v. State*, 204 So. 3d 63, 72 (Fla. 4th DCA 2016) ("The sentencing factors properly considered by the trial court relate to the defendant, his offense, and the victim."); *Imbert v. State*, 154 So. 3d 1174, 1175 (Fla. 4th DCA 2015) (holding judges "may consider a variety of factors, including a defendant's criminal history, employment status, family obligations, and over-all reputation in the community"); *see also Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000) (noting that judges may "exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute").[3]

---

[3] In *Norvil v. State*, the Florida Supreme Court adopted a "bright line rule for sentencing purposes: a trial court may not consider a subsequent arrest without conviction during sentencing

7

A defendant's remorse or willingness to accept responsibility comprises part of the whole picture. These factors speak to a defendant's character and to the defendant's potential for rehabilitation. As our supreme court has recognized, "[t]o an unspecified degree, the sentencing judge is obligated to make his decision on the basis, among others, of predictions regarding the convicted defendant's potential, or lack of potential, for rehabilitation." *Simmons v. State*, 419 So. 2d 316, 320 (Fla. 1982) (quoting *Grayson*, 438 U.S. at 47-48). Indeed, with a legislative pronouncement that rehabilitation "is a desired goal of the criminal justice system" (albeit subordinate to punishment), § 921.002(1)(b), Fla. Stat., consideration of remorse or acceptance of responsibility is critical: "If a defendant is remorseful, it means that he is sorry he committed the crime for which he is to be sentenced. One who so regrets his acts may not commit such acts in the future." *St. Val*, 958 So. 2d at 1146; *accord Burr v. Pollard*, 546 F.3d 828, 832 (7th Cir. 2008) (explaining that "an indifferent criminal isn't ready to reform," that "a remorseful criminal is less likely to return to his old ways," and that therefore remorse "is properly considered at sentencing because it speaks to traditional

---

for the primary offense." 191 So. 3d 406, 410 (Fla. 2016). That bright-line rule is not at issue here, and its underlying rationale does not undermine our conclusion. The court concluded that the Criminal Punishment Code explicitly authorized consideration of "prior arrests" and thus implicitly precluded consideration of later arrests. *Id.* at 408-09. But the PSI provision referenced in *Norvil* authorizes consideration of, among many other things, "the offender's motivations and ambitions and an assessment of the offender's explanations for his or her criminal activity." § 921.231(1)(*l*), Fla. Stat. A defendant's motivations, ambitions, and explanations of conduct capture remorse or willingness to accept responsibility. And like many of the other PSI considerations geared toward seeing the whole picture—educational background, social history, medical history, environments to which the offender might return, treatment opportunities, vocational training opportunities, prior criminal history, "[a] complete description of the situation surrounding the criminal activity," and so on, *id.* § 921.231(1)—these factors aid the court in gauging a defendant's rehabilitation potential.

8

penological interests such as rehabilitation"); *cf. also Simmons v. State*, 419 So. 2d 316, 320 ("A person's potential for rehabilitation is an element of his character . . . ."); *State v. Stevens*, 191 P.3d 217, 226 (Idaho 2008) (concluding that "a court may consider a defendant's continued assertion of innocence when evaluating the possibility of rehabilitation").

For these reasons, we can no longer embrace the blanket, judge-made rule that when it comes to sentencing, "[a] lack of remorse or a failure to accept responsibility may not be considered." *Dumas*, 134 So. 3d at 1048; *see also, e.g., Wood v. State*, 148 So. 3d 557 (Fla. 1st DCA 2014); *K.Y.L.*, 685 So. 2d at 1381 ("[L]ack of contrition or remorse is a constitutionally impermissible consideration in imposing sentence.").

Aside from the never-consider-remorse-or-responsibility rule that some cases have followed, there is a separate (and perhaps more restrained) view that judges may rely on remorse to *reduce* a sentence but may not rely on a *lack* of remorse to *increase* a sentence. Under this view, remorse is a proper mitigating factor but not a proper aggravating factor. *See Ritter v. State*, 885 So. 2d 413, 414 (Fla. 1st DCA 2004) (citing *Holton*, among others) ("Although remorse and an admission of guilt may be grounds for mitigation of sentence, the opposite is not true."); *see also Catledge v. State*, 255 So. 3d 937, 941 (Fla. 1st DCA 2018). And to be sure, the Florida Supreme Court has applied this concept in capital sentencing. *See Pope v. State,* 441 So. 2d 1073, 1078 (Fla. 1983) ("Any convincing evidence of remorse may properly be considered in mitigation of the sentence, but absence of remorse should not be weighed either as an aggravating factor nor as an enhancement of an aggravating factor."). But rules applicable to the unique capital-sentencing context do not always find easy application in everyday sentencings like Davis's, and the mitigation-versus-aggravation rules do not apply here.

The maximum penalty in a death-penalty case—death—requires more than just a conviction; it requires proof of a statutory aggravating factor. *See* § 921.141, Fla. Stat. Lack of remorse is not among the statutory aggravating factors and cannot be used to justify a death sentence. *Shellito v. State*, 701 So. 2d 837, 842 (Fla. 1997). On the other hand, capital defendants can assert anything

in mitigation, *Hitchcock v. Dugger*, 481 U.S. 393, 394 (1987), and anything includes remorse. It is therefore unsurprising that the Florida Supreme Court has held that in the capital-sentencing context, remorse can help a capital defendant as a mitigating factor, but that lack of remorse cannot work against him as an aggravating factor. *See Oliver v. State*, 214 So. 3d 606, 614-15 (Fla. 2017); *Pope*, 441 So. 2d at 1078.

Judges in noncapital cases, though, do not consider "aggravators" and "mitigators" in the same sense that capital sentencers do. After the Criminal Punishment Code's enactment, our sentencing statutes no longer "contemplate upward departure sentences, because generally the statutory maximum sentence is the highest possible sentence for any crime." *Bryant v. State*, 148 So. 3d 1251, 1258 (Fla. 2014); *see also* § 921.002(1)(g), Fla. Stat. ("The trial court judge may impose a sentence up to and including the statutory maximum for any offense . . . ."). In Davis's case, then, the judge had statutory authority to impose a sentence of up to fifteen years. § 775.082(1)(d), Fla. Stat. He could do so with a remorseful defendant, and he could do so with an unremorseful defendant. He could do so with a defendant taking responsibility for his crimes, and he could do so with a defendant unwilling to take responsibility. The conviction alone was enough to justify the sentence. No "aggravator" or additional findings were necessary. *Lane v. State*, 981 So. 2d 596, 598 (Fla. 1st DCA 2008).

Next, if we held that Davis's refusal to take responsibility could not increase his sentence but could justify *not lowering* his sentence, *see Ritter*, 885 So. 2d at 414, we would have to figure out which of those happened, and it is not clear how we would do that. If a judge gives an unremorseful defendant a longer sentence than he might have given a remorseful defendant, we often will never know whether the resulting differential flowed from an "aggravated" sentence or an "unmitigated" sentence. There is no baseline sentence, no upward or downward departure—just a sentence that involved a judge's consideration (in some fashion) of the offense and the defendant's characteristics. Indeed, that is the situation here. Yet our dissenting colleagues vote to reverse Davis's sentence without ever deciding whether the judge impermissibly increased Davis's sentence or permissibly refused to decrease it.

10

Notably, none of today's opinions doubts the legality of considering remorse or acceptance of responsibility to *reduce* (or not reduce) a sentence.[4] This further supports our conclusion that these considerations are, in fact, valid sentencing considerations. It should go without saying that no up-versus-down distinction would be an issue with truly impermissible sentencing factors. With religion, for example, we would never say a judge could lighten a sentence for defendants who disavowed Catholicism, so long as the judge did not enhance sentences for those who embraced Catholicism. *Cf. Torres v. State*, 124 So. 3d 439, 442 (Fla. 1st DCA 2013) (reversing sentence where judge assumed defendant was Catholic and made comments that could "reasonably be construed to suggest that the trial judge based appellant's sentence, at least in part, on religion"). We would instead say—quite emphatically—that a defendant's religious faith must not play *any* part in the sentence. In other words, we would say improper sentencing factors should not be factors in sentencings—up or down. *See id.* ("No one should be punished, *or conversely shown leniency*, merely because he or she may be a member of a particular religion." (emphasis added)); *cf. also Roberts v. United States,* 445 U.S. 552, 557 n.4 (1980) ("We doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed upon the petitioner and denying him the 'leniency' he claims would be appropriate if he had cooperated."); *Noel*, 191 So. 3d at 379 ("We view a sentence providing for a reduction of prison time upon the payment of restitution no

---

[4] Suppose, for example, the judge had explained his sentence this way: "Mr. Davis, the severity of your crimes, coupled with your extensive criminal history, warrant the maximum sentence, and based on these factors alone, that is the sentence I would impose. The only thing that could have convinced me to do otherwise would have been had you shown remorse today, which you have not. Therefore, I sentence you to fifteen years." None of today's dissents suggests that would be impermissible. Yet they apparently assume that the trial judge increased the sentence from some other unannounced baseline, rather than declined to reduce from the maximum.

different than a trial court imposing a lengthier sentence if the defendant fails to make a restitution payment . . . .").

This brings us back to the rule from *Holton*, from which some of our cases eventually determined that courts may not consider—at all—a defendant's failure to take responsibility or a defendant's lack of remorse. *Holton* held that "[t]he fact that a defendant has pled not guilty cannot be used against him or her during any stage of the proceedings." 573 So. 2d at 292. But when a defendant forgoes permissible benefits of pleading guilty (such as a lenient sentence), it does not necessarily follow that his not-guilty plea was unconstitutionally "used against him."

The United States Supreme Court has "squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea." *Corbitt v. New Jersey*, 439 U.S. 212, 219 (1978). These substantial benefits can include sentences lower than what would be possible after trial, or even sentences lower than would be *required* after trial. *Id.*; *cf. also* § 921.0026(2)(a) (authorizing downward departure if it "results from a legitimate, uncoerced plea bargain"). In other words, it does not violate the Constitution to present defendants with the choice of either giving up the right to a trial or losing the prospect of a reduced sentence. Presenting defendants with these choices "clearly may have a discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices is an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (marks and alterations omitted).

To the extent Davis had to choose between maintaining his innocence at sentencing or seeking a more favorable sentence, he was in no different situation than defendants facing plea offers every single day. In fact, had Davis requested a downward departure based on section 921.0026(2)(a)—which requires a showing that there was "a legitimate, uncoerced plea bargain"—the trial court obviously would have rejected the request because Davis did not plead guilty. Yet we surely would not say his decision to plead not guilty was unconstitutionally "used against him." *Cf. United States v. Reed*, 882 F.2d 147, 150 (5th Cir. 1989) (explaining that a defendant seeking reduced sentence based on acceptance of

responsibility "may find it difficult, after conviction, to persuade the district court that he is entitled to [that] reduction," but noting that "this difficulty does not mean that a defendant is penalized for failing to plead guilty") (quoting *United States v. White*, 869 F.2d 822, 826 (5th Cir. 1989)). Nothing in *Holton*'s broad and general language changes any of this.[5]

That is not to say, of course, that courts may *punish* defendants for exercising their jury-trial rights. "Under our constitutional system it would be impermissible for the sentencing authority to mete out higher sentences . . . as punishment for those who successfully exercised their right[s]." *Chaffin v. Stynchcombe*, 412 U.S. 17, 24 (1973). A defendant may still challenge a sentence not exceeding the statutory maximum, if he can "argue that his sentence was a result of vindictiveness." *Hall v. State*, 823 So. 2d 757, 762 (Fla. 2002). There is nothing in this record, though, to even hint this was the case. As in *Corbitt*, "[w]e discern no element of retaliation or vindictiveness against [the defendant] for going to trial. . . . Nor does this record indicate that he was being punished

---

[5] In fact, long after *Holton*, the Florida Supreme Court recognized that "not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid." *Pasha v. State*, 225 So. 3d 688, 702 (Fla. 2017) (quoting *Corbitt*, 439 U.S. at 218). Moreover, *Holton* was a death case, and it applied its broad language in a context different from that presented here. 573 So. 2d at 292. The argument in *Holton* was that the trial judge failed to consider impaired capacity as statutory mitigating factor under the capital-sentencing scheme. The trial court rejected use of that factor, noting that the defendant maintained he did not commit the crime and concluding that "[t]his factor would not apply in view of that sworn testimony." *Id.* The supreme court explained that "entering a plea of not guilty does not preclude consideration by the sentencer of matters relevant to mitigation." *Id.* And in that context, it explained that a defendant's not-guilty plea "cannot be used against him." *Id.* It stopped far short of holding that any consideration regarding lack of remorse requires resentencing. In fact, the *Holton* decision affirmed the death sentence, concluding that any sentencing error was harmless. *Id.* at 293.

for exercising a constitutional right." 439 U.S. at 223; *see also Beech v. State*, 436 So. 2d 82, 85 (Fla. 1983) (holding that absent evidence that sentences "were imposed to retaliate against the petitioners for having pursued their rights, the presumption of correctness stands"). Again, "withholding the possibility of leniency from [those electing trial] cannot be equated with impermissible punishment." *Corbitt*, 439 U.S. at 223. "If [defendant] had been filled with remorse at his resentencing and admitted his crimes before the district court, it is possible that he would have received a reduced sentence. But this does not mean that he was punished for maintaining his innocence in any way that the Constitution recognizes." *United States v. McClain*, 2 F.3d 205, 207 (7th Cir. 1993); *accord United States v. Thompson*, 476 F.2d 1196, 1201 (7th Cir. 1973) ("A show of lenience to those who exhibit contrition by admitting guilt does not carry a corollary that the Judge indulges in a policy of penalizing those who elect to stand trial."); *St. Val*, 958 So. 2d at 1147 ("This is not a case where a defendant was punished for protesting his innocence as in . . . *Holton*. Nor is it a case where a court used lack of remorse as an aggravating factor in a first degree murder prosecution.").

In some other case, it might appear that a judge's refusal to grant leniency is tantamount to punishing the defendant for going to trial. But this is not that case. Here the judge simply observed that, after a long criminal history, Davis continued to commit crimes—that even after multiple convictions and multiple punishments, Davis "still fail[s] to take any responsibility for [his] actions." This did not prove a constitutional violation.[6]

---

[6] One final observation: We are troubled by any suggestion that judges inclined to consider impermissible sentencing factors could avoid reversals by curtailing their explanations. A judge who silently relies on improper factors violates the constitution no less than a judge who does so loudly. Rather than counsel judges to stay quiet when violating defendants' constitutional rights, we ought to insist judges not violate defendants' constitutional rights at all. And we can better review sentences for constitutional violations when judges explain themselves. *Cf. Grayson*, 438 U.S. at 44 (quoting sentencing court) ("I'm going to give my reasons for sentencing in this case with clarity, because one of the reasons may

IV.

Although we affirm Davis's conviction and sentence, we certify that we pass upon an issue of great public importance. We certify the following question, giving the Florida Supreme Court an opportunity to provide clarity in this area.

> WHEN, IF EVER, MUST AN APPELLATE COURT REVERSE A SENTENCE BASED ON THE TRIAL COURT'S CONSIDERATION OF "REMORSE," "FAILURE TO TAKE RESPONSIBILITY," OR THE LIKE?

The judgment on appeal is AFFIRMED.

B.L. THOMAS, C.J., and ROWE, RAY, OSTERHAUS, JAY, and M.K. THOMAS, JJ., concur.

B.L. THOMAS, C.J., concurs in an opinion in which JAY and M.K. THOMAS, JJ., join.

KELSEY, J., concurs in result with opinion.

LEWIS, J., concurs in part and dissents in part in an opinion in which MAKAR and BILBREY, JJ., join.

WETHERELL, J., concurs in part and dissents in part in an opinion in which ROBERTS, MAKAR, and BILBREY, JJ., join.

---

well be considered by a Court of Appeals to be impermissible; and although I could come into this Court Room and sentence this Defendant to a five-year prison term without any explanation at all, I think it is fair that I give the reasons so that if the Court of Appeals feels that one of the reasons which I am about to enunciate is an improper consideration for a trial judge, then the Court will be in a position to reverse this Court and send the case back for re-sentencing."); *United States v. Brown*, 479 F.2d 1170, 1173 (2d Cir. 1973) (noting, in sentencing context, that "[a] Sphinx-like silence on the court's part precludes anyone (including the parties, the judge, and an appellate tribunal) from learning whether he acted in error").

MAKAR, J., concurs in part and dissents in part in an opinion in which LEWIS and BILBREY, JJ., join.

WOLF and WINOKUR, JJ., recused.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

B.L. THOMAS, C.J., concurring.

No one has a constitutional right to be remorseless about committing crimes, as well documented in footnote 2 of the majority opinion. And under specific legislative authorization in the Criminal Punishment Code, a trial court can impose the maximum statutory penalty on a remorseless convicted criminal defendant or any other convicted criminal defendant for a non-capital felony. *See* § 921.002(1)(g), Fla. Stat. (2017) ("The trial court judge may impose a sentence *up to and including the statutory maximum* for any offense . . ..") (emphasis added). Judicial precedent to the contrary, and those opinions consistent with that precedent, contravene this specific legislative authority in violation of the separation of powers enshrined in our organic law in Article II, section 3, of the Florida Constitution. *See Booker v. State*, 514 So. 2d 1079, 1081-82 (Fla. 1987) ("The rule in Florida historically has been that a reviewing court is powerless to interfere with the length of a sentence imposed by the trial court so long as the sentence is within the limits allowed by the relevant statute.").

In addition to authorizing trial courts to impose the maximum penalty on a convicted felon for any reason, which necessarily includes the lack of remorse, the Legislature has authorized trial courts to treat a remorseful convicted criminal defendant more leniently. *See* § 921.0026(1),(2)(j), Fla. Stat. (2017) ("A downward departure from the lowest permissible sentence . . . is prohibited unless there are circumstances or factors that reasonably justify the downward departure . . . [including where] [t]he offense was

16

committed in an unsophisticated manner and was an isolated incident for which the defendant has *shown remorse.*") (emphasis added).

In enacting the Criminal Punishment Code, the Legislature specifically rejected prior policy that limited trial courts' sentencing discretion. Thus, the majority opinion does not violate the holding of *Huffman v. Jones,* 280 So. 2d 431 (Fla. 1978), as prior cases that interpreted different sentencing laws have no application to unfettered felony sentencing under the Code.

Prior judicial decisions commanding trial courts to ignore a convicted criminal defendant's lack of remorse or refusal to accept responsibility not only contravene legislative policy, the rationale of those decisions flies in the face of common sense, human decency, and civilized norms. *See, e.g.*, *Joreski v. State,* 288 P.3d 413, 417-18 (Wyo. 2012) (holding trial court did not commit plain error in considering the defendant's lack of remorse and flippancy about chronic sexual abuse of defendant's daughter when imposing sentence, and Wyoming law allows consideration of failure to accept responsibility). In *Wainwright v. Goode,* 464 U.S. 78, 79 (1983), for example, the defendant "was 'extremely proud of having murdered [and sexually assaulted ten-year-old] Jason 'for the fun of it'" and had "'absolutely no remorse' over the murder" and "would do it again if given the chance." Contrary to the decisions that would command sentencers to ignore this lack of remorse, the Supreme Court held that the Florida Supreme Court did not violate the Eighth Amendment by affirming the trial court's consideration of this nonstatutory aggravating factor. *Id.*

The well-reasoned majority opinion correctly notes that this court and other district courts have unjustifiably limited trial courts' sentencing discretion in non-capital felonies by expanding the rule from the capital case of *Holton v. State,* 573 So. 2d 284, 292 (Fla. 1990), regarding a defendant's assertion of innocence in the context of "consideration by the [capital] sentencer of matters relevant to mitigation." The majority opinion correctly distinguishes cases where the supreme court addressed capital sentencing or pre-Criminal Punishment Code sentencing, both of which entail sentencing statutes that preclude enhanced sentences, absent very limited and specific considerations. *See* §

921.141(3)(a)(2), Fla. Stat. (2017) ("If the jury has recommended a sentence of . . . [d]eath, the court . . . may consider *only an aggravating factor that was unanimously found to exist by the jury*") (emphasis added); § 921.001(5), Fla. Stat. (1989) ("The *failure* of a trial court to impose a sentence *within the sentencing guidelines shall be subject to appellate review . . . .* A departure sentence shall be based upon circumstances or factors which reasonably justify the aggravation or mitigation of the sentence") (emphasis added).

The majority opinion correctly recedes from prior precedent that improperly limits trial courts' lawful sentencing discretion in violation of the separation of powers. Therefore, I fully concur in the majority opinion.

KELSEY, J., concurring in result.

I concur in the disposition of Appellant's arguments, and in certifying a question to the Florida Supreme Court. The issues we address today merit the supreme court's consideration. I dissent from our receding from precedent, however, because I conclude that supreme court precedent binds us; and if so, only the supreme court can release us. *Hoffman v. Jones*, 280 So. 2d 431, 433-34 (Fla. 1973). Just as all of the district courts have done, the supreme court has announced and followed a broad rule that lack of remorse should not be considered in sentencing:

> Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence. This invites the sort of mistake which occurred in the case now before us—inferring lack of remorse from the exercise of constitutional rights. This sort of mistake may, in an extreme case, raise a question as to whether the defendant has been denied some measure of due process, thus mandating a remand for reconsideration of the sentence. For these reasons, we hold that henceforth lack of remorse should have no place in the consideration of aggravating factors.

*Pope v. State,* 441 So. 2d 1073, 1078 (Fla. 1983); *see also State v. Mischler,* 488 So. 2d 523, 526 (Fla. 1986) (holding, in guidelines

18

departure analysis in a non-death case, that "lack of remorse to support a departure sentence cannot be inferred from either the mere exercise of a constitutional right or a continuing assertion of innocence"), *superseded by statute on other grounds,* ch. 87-110, § 2, and ch. 93-406, § 13, Laws of Fla., *as recognized in Banks v. State,* 732 So. 2d 1065, 1068 n.8 (Fla. 1999).

The supreme court addressed the same issues in *Beasley v. State*, 774 So. 2d 649 (Fla. 2000), a death case, quoting with approval the Fourth District's remorse analysis in *Mischler*, a non-death case:

> "Remorse" is defined in Webster's Third New International Dictionary 1921 (1993), as "a gnawing distress arising from a sense of guilt for past wrongs (as injuries done to others)." Given this definition, as the Fourth District (in discussing why a defendant's lack of remorse which is not "repugnant, odious and accompanied by a confession," cannot be used as a reason to depart from sentencing guidelines) queried,
>
>> How can one be expected to show remorse concurrently with the maintenance of innocence? Nor does a jury guilty verdict [sic] automatically extinguish the right to continued proclamation of blamelessness. Moreover, even if it did, defendants at sentencing could avoid aggravation by simply declaring their innocence and gratuitously expressing sorrow for the victim.
>
> *Mischler v. State,* 458 So. 2d 37, 38 (Fla. 4th DCA 1984), *approved,* 488 So. 2d 523 (Fla. 1986). As observed in *Robinson v. State,* 520 So. 2d 1, 6 (Fla. 1988), a lack of remorse is not considered an aggravating factor in death penalty cases. While "[a]ny convincing evidence of remorse may properly be considered in mitigation of the sentence," the absence of remorse "should not be weighed either as an aggravating factor [or] as an enhancement of an aggravating factor." *Pope v. State,* 441 So. 2d 1073, 1078 (Fla. 1983).

19

*Beasley*, 774 So. 2d at 672; *see also, e.g., Fletcher v. State*, 168 So. 3d 186, 212-13 (Fla. 2015) (describing as "axiomatic" that State cannot assert lack of remorse as an aggravating factor, but finding the error harmless where it was injected through an improper question and answer from State's psychological expert); *Cromartie v. State*, 70 So. 3d 559, 562-63 (Fla. 2011) (distinguishing between errors in sentencing process, and sentence imposed, in non-death case, and approving district court's fundamental-error analysis and conclusion that trial court's emphasis on defendant's failure to take responsibility constituted denial of due process in sentencing). Generally to the same effect is *Holton v. State,* 573 So. 2d 284, 292 (Fla. 1990), which the majority discusses. The bottom line is that we must await the supreme court's modification of the governing case law before we adopt a different law for our district and create conflict with the rest of the State.

On the merits, I conclude that we can and should affirm Appellant's sentence because, considered in context, and even with no clarification or modification of existing law, this sentence was not the product of punitive reliance on Appellant's assertion of innocence. My concern is for clarifying the analytical process involved—that of drawing the line between proper sentencing considerations and improper punishment of the exercise of constitutional rights. *Cf. Burns v. State,* 43 Fla. L. Weekly D1569, 2018 WL 3371723 (Fla. 1st DCA July 11, 2018) (certifying question of great public importance regarding scope of proper consideration of defendant's lack of remorse for crime of conviction, and noting two district court judges' concurring opinions advocating for supreme court review of the rule against considering lack of remorse), *review granted,* No. SC18-1208 (Fla. Jan. 2, 2019). This analytical process, like many mental processes in which judges at all levels engage every day, takes longer to write out than to do. This analysis should be happening under existing law, and would be required under the majority's approach as well. Because constitutional rights are at stake, the effort seems worthwhile.

### I. Detailed Pre-Sentence Context

**Presentence Investigation Report.** Immediately after the jury rendered its verdict, the State requested, and the trial judge

ordered, a presentence investigation report, because the State had filed a habitual felony offender motion. The PSI was filed with the trial court and, on Appellant's motion, included in the record on appeal. It included Appellant's prior record as required by law. § 921.231(1)(c), Fla. Stat. (2016). Appellant's PSI reflects a prior history of ten felony convictions as an adult and eleven adjudications of guilt as a juvenile (following five juvenile cases in which adjudications were withheld). The disposition recommendation in the PSI was as follows:

> The defendant has an extensive prior criminal history which includes numerous violent offenses. The defendant has had opportunities to rehabilitate, however apparently chooses to continue to engage in criminal behavior. The defendant also appears to have a history of gang related activity. The defendant apparently continues to be a threat to the safety of the community. It is therefore respectfully recommended that he be sentenced to the maximum amount of incarceration allowed by the sentencing guidelines.

**Prosecutor's Comments.** At the sentencing hearing, the prosecutor gave the judge Appellant's criminal punishment code scoresheet. That scoresheet listed eleven prior offenses: one prior first-degree felony punishable by life (armed robbery with a firearm); five second-degree felonies (attempted second-degree murder, attempted armed robbery with a firearm, discharging firearm on school property, aggravated battery with a deadly weapon, and aggravated assault on a law enforcement officer); four third-degree felonies (aggravated assault with a deadly weapon, resisting officer with violence, felony battery, and battery on a law enforcement officer); and one unspecified misdemeanor. The prosecutor discussed the length of the criminal scoresheet and its inclusion of numerous violent offenses including multiple firearms offenses. The prosecutor argued that Appellant's history justified imposition of the statutory maximum sentence of fifteen years in prison with three years minimum mandatory for actual possession of a firearm. The prosecutor noted that the evidence of guilt was clear, that Appellant had an extensive "violent history," and that the new offense was a flagrant violation of the law, the flagrancy arising out of the fact that Appellant clearly knew of his own felony

history and thus knew he should not have possessed a gun (emphasis added):

> And, Your Honor, in looking at the defendant's score sheet, it's quite long and importantly it's filled with violent offenses, a number of them including firearms. . . . Based on that violent *history*, based on him yet again possessing a firearm when he knows he's a convicted felon, . . . . The State is asking for the statutory maximum of 15 years in the Department of Corrections, with a three-year minimum mandatory for actual possession of a firearm. We believe that's the only appropriate sentence given the defendant's flagrant running afoul of the law, yet again with a firearm, despite an extensive violent *history*.

**Defense Counsel's Comments.** Defense counsel acknowledged that Appellant "has a significant *history* and it's not something that we can deny." (Emphasis added.) The defense requested a ten-year sentence as one that would be "substantial and significant . . . for someone who unfortunately has been incarcerated for most of his life."

**Appellant's Comments.** In an allocution to the court filling nearly three pages of the transcript, Appellant denied that he possessed or even knew about the gun in the car. He argued that the juvenile driving the car blamed Appellant in order to receive—and then actually received—a more lenient charge arising out of the drug paraphernalia also found in the car. Appellant argued that the evidence was clearly not sufficient to convict him, and that he was convicted because his lawyer did not do a good job. He stated he would apologize if he had done anything wrong, but did nothing wrong, was not guilty, and was innocent:

> If I did anything wrong, or said anything that's inappropriate, I would apologize. Right now, and I ask— I would be asking for leniency, but I did nothing wrong. I am not guilty of the charge that I'm accused of. I am innocent.

22

Appellant continued to argue the evidence for another page and a half of the transcript, asserting that his counsel failed to protect his interests.

**Trial Judge's Comments.** Immediately after Appellant discussed his view of the evidence and his lawyer's performance, the trial judge stated as follows, making the emphasized comments that give rise to Appellant's second argument on appeal (emphasis added):

> Mr. Davis, quite frankly we're not here to retry the facts of the case. I heard the evidence. It was put before a jury and they found beyond a reasonable doubt that you are guilty of the charged offense. And from my review of the evidence, and from what I heard in the courtroom and the testimony and the evidence provided, quite frankly I think they got it right.

> And I can see here by your score sheet, you have an extensive violent *history* here and a lot of it involves a firearm. We have a second degree murder, attempted second degree murder, attempted armed robbery with a firearm, armed robbery with a firearm, aggravated assault with a deadly weapon, discharging a firearm on school property, aggravated battery with a deadly weapon, battery on a law enforcement officer, felony battery. Just a violent, unfortunate *history* that we're dealing with. And a lot of it involves a firearm. And now we have a new offense that involves a firearm again.

> And quite frankly, you know, they found you with the firearm before any harm could come of it, because who knows what would have happened[1] . . . if there was an opportunity to use that firearm in the future. And so that is one of the good things that came out of it was that there wasn't that opportunity.

---

[1] At this point, Appellant interjected, "They found me with the firearm?" The court did not respond.

*You still fail to take any responsibility for your actions. And considering your history here, your failure to take any responsibility, the nature of the crime, the fact that it involves a firearm*, the Court will sentence you to 15 years in the Department of Corrections, which is the statutory maximum.

Counsel did not object to the trial judge's comments or his use of the word "responsibility."

The trial judge's final emphasized comments raise the following questions: (A) Is it fundamental error for a sentencing judge to reference a defendant's failure to "take responsibility"?; and (B) If so, how are courts to determine when such comments are impermissible and require resentencing? The issue is whether Appellant's constitutional rights were violated, and therefore our review is de novo. *Cromartie*, 70 So. 3d at 563.

## II. Legal Analysis

### (A) "Responsibility" and "Remorse"

First, courts need to be clear in using the words "responsibility" and "remorse." "Responsibility" means "the quality, state, or condition of being answerable or accountable." "Remorse" means "a strong feeling of sincere regret and sadness over one's having behaved badly or done harm; intense, anguished self-reproach and compunction of conscience, esp. for a crime one has committed." *Responsibility; Remorse,* BLACK'S LAW DICTIONARY (10th ed. 2014).[2] *See also Beasley*, 774 So. 2d at 672 (quoting another dictionary definition of "remorse" as "a gnawing distress arising from a sense of guilt for past wrongs (as injuries done to others)") (citations omitted).

---

[2] The words have similar meanings in the non-legal dictionary. "Responsibility" means "the quality or state of being responsible: such as moral, legal, or mental accountability." "Remorse" means "a gnawing distress arising from a sense of guilt for past wrongs." *Responsibility; Remorse,* MERRIAM-WEBSTER ONLINE DICTIONARY, www.merriam-webster.com/dictionary.

In this case, the sentencing judge said only "responsibility," not "remorse." Both words could refer to valid sentencing factors. Both words could refer instead to a defendant's refusal to admit guilt and display regret for the crime of conviction. Some sentencing judges appear to use these words interchangeably, while others appear to intend different meanings. In short, these words are inherently ambiguous (unlike, for example, explicit references to a defendant's race, gender, age, or faith), and the context of their use in sentencing can be ambiguous.

Courts cannot punish defendants for exercising their constitutional rights to remain silent, maintain innocence, and go to trial on the pertinent crime of conviction. *Holton*, 573 So. 2d at 292 (holding courts cannot penalize defendants for exercising their constitutional rights); *see* Amends. V (silence), VI (trial), U.S. Const.; Art. I §§ 9 (silence), 22 (trial), Fla. Const.. These rights exist at all stages of a criminal proceeding "because due process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant." *Holton*, 573 So. 2d at 292. We must determine whether constitutional rights have been violated.

On the other hand, sentencing courts can consider and rely upon factors such as defendants' prior criminal convictions, character, likelihood of rehabilitation or recidivism, the deterrent effect of punishment, and danger to others upon release. § 921.002(1)(d) ("The severity of the sentence increases with the length and nature of the offender's prior record."); *see* § 921.231(1)(m) (mandating that presentence investigation report include, among other things, explanation of the offender's criminal record and offender's explanation of prior offenses); § 948.015 (same PSI contents for non-state-prison sanctions). We must respect the validity of these sentencing factors and the proper exercise of judicial discretion.

## (B) Contextual Analysis

### 1. Precedential Support

Given our competing obligations to protect constitutional rights and to allow sentencing judges to consider appropriate factors, we must apply a contextual analysis to determine whether impermissible punishment has occurred. As we have held previously, a sentencing court's mere use of the words "remorse" or "responsibility" is not per-se reversible error:

> While it is fundamental error to punish a defendant for exercising his or her constitutional rights, we decline to hold that any mention by a sentencing judge of a defendant's claim of innocence or failure to "take responsibility" during a sentencing hearing automatically renders the sentence an infringement of the defendant's constitutional right to maintain one's innocence.

*Hayes v. State*, 150 So. 3d 249, 252 (Fla. 1st DCA 2014); *see also Burr v. Pollard,* 546 F.3d 828, 832 (7th Cir. 2008) ("[T]he constitution is not violated by a mere slip of the tongue.").

In *Hayes*, factually similar to this case, we concluded that the sentencing judge did not base the sentence on impermissible factors where, after stating multiple times that the defendant failed to take responsibility or show remorse despite the jury's guilty verdict, the court expressly denied punishing the defendant for maintaining his innocence, and imposed a guidelines sentence with a mandatory minimum. 150 So. 3d at 250–52. We noted that the court's comments were in the context of reviewing the defendant's extensive criminal history and pattern of violations. *Id.* In doing so, we necessarily evaluated the trial court's comments in their larger context.

Rather than reverse a sentence reflexively if the sentencing judge speaks ambiguous buzz words, we must evaluate sentencing comments fairly and reasonably, with a thoughtful fact-specific and contextual inquiry that is sensitive to both the defendant's constitutional rights and the trial court's authority and discretion

26

in sentencing. A reasoned analytical approach to the issue is feasible, promotes clarity and uniformity, and is frequently performed already. *E.g., Oliver v. State,* 214 So. 3d 606, 615-16 (Fla. 2017) (considering context of prosecutor's comments on lack of remorse, the brevity of the reference, and the unlikelihood that the single comment affected the outcome); *Catledge v. State,* 255 So. 3d 937, 940-41 (Fla. 1st DCA 2018) (considering context to determine that comments related to mitigation); *Burns,* 2018 WL 3371723 at *2 (noting necessity of reviewing sentencing comments in context); *Allen v. State,* 211 So. 3d 48, 52 (Fla. 4th DCA 2017) (setting forth several contextual considerations guiding the court's analysis of "whether appellant's sentence was improperly influenced by his failure to admit guilt"); *Godwin v. State,* 160 So. 3d 497, 498 (Fla. 2d DCA 2015) (evaluating comments in context to conclude they properly related to mitigation); *Torres v. State,* 124 So. 3d 439, 442 (Fla. 1st DCA 2013) (considering context as indicating sentence was based at least in part on impermissible factors and court could not conclude the sentence would be the same regardless); *Aliyev v. State,* 835 So. 2d 1232, 1235 (Fla. 4th DCA 2003) (evaluating context of judge's comment about defendant's courtroom outburst to determine whether it referred to improper factor, and concluding there was no error especially where sentence was lenient); *Harden v. State,* 428 So. 2d 316, 317 (Fla. 4th DCA 1983) (interpreting court's comments as "clearly" referring to defendant's failure to confess); *see also United States v. Espinoza,* 550 F. App'x 690, 695 (11th Cir. 2013) (quoting *United States v. Webb,* 139 F.3d 1390, 1394–95 (11th Cir. 1998), as interpreting sentencing judge's ambiguous comments according to the rationale "more strongly" suggested by the record).

### 2. Applying Contextual Analysis

The cases already cited, and many similar to them, embody the principle that we must look beyond mere words spoken, and evaluate the context to determine whether the words evidence an improper *reliance on* the exercise of constitutionally-protected rights. In this regard, courts need to be clear about their verbs: "consideration of" and "reliance on" are not the same thing. It is only a punitive *reliance on* improper factors in sentencing that is improper. We must evaluate the context to determine whether a

sentencing judge relied on an improper factor resulting in an infringement of the defendant's constitutional rights.

The Fourth District in *Allen* articulated an analytical test specific to the facts of that case, where the trial judge engaged in a protracted colloquy with the appellant in an *express* attempt to extract a confession of guilt as a quid pro quo to imposition of a more lenient sentence. 211 So. 3d at 51-52. The court considered first whether the appellant had maintained his innocence after conviction, how the trial court attempted to elicit an admission of guilt and the degree of coercion the court used, and whether the court expressly or impliedly offered a more favorable sentence in exchange for an admission of guilt or remorse. *Id.* Examining the context, the court concluded that the trial judge improperly relied on the appellant's "unrelenting insistence of innocence" in determining the sentence. *Id.* at 52.

The judge's comments here are quite different from those in *Hayes* and *Allen*. The contextual lead-in to the sentencing comments begins with the PSI's long list of prior convictions and recommendation of a harsh sentence because of the obvious ineffectiveness of leniency and the likelihood of recidivism. This is followed by counsel's handing Appellant's scoresheet to the judge, and *both* counsel then describing the scoresheet as involving a lengthy "history" of violent crime and firearms offenses. One can readily envision that the trial judge was quite literally holding up the scoresheet as he addressed Appellant with reference to his "history"; but we need not be in the courtroom or have a video of the sentencing hearing to conclude, entirely reasonably and without presuming that the trial judge intentionally or negligently relied on an improper sentencing factor, that this judge was commenting on Appellant's criminal history and his lawless character—valid sentencing considerations in the view of every judge on this Court. The comments at issue occurred after the judge's consideration of Appellant's PSI, CPC scoresheet, and emphasis on Appellant's criminal history by both the prosecutor and defense counsel. With that context, the judge observed that Appellant still failed to take responsibility for his actions, and in light of his criminal history and failure to take any responsibility, the nature of this crime, and the fact that it involved a firearm, the

28

judge imposed a legal sentence, the maximum permitted under the guidelines.

The judge engaged in no quid-pro-quo attempt to extract a confession of guilt as in *Allen*. The judge's use of the word "responsibility" was not a feature of the sentencing hearing, but was a brief summation of valid sentencing factors that had just been addressed in writing and in oral comments. The judge's comments were tied to valid sentencing factors—Appellant's past criminal record, his undeniable awareness that he was not permitted to possess a gun, and his apparent failure to exert any effort to live a life free from crime. The sentence imposed was a legal sentence, consistent with the recommendation in the PSI, and consistent with the sentence that the State recommended. Overall, this context more strongly suggests that the trial judge's reference to Appellant's "responsibility" related to exactly what the documents and argument of both counsel had emphasized: Appellant's significant past criminal history.

There was no objection to the trial judge's comments, and no request for clarification in light of Appellant's constitutional rights, which one would expect to hear immediately from a lawyer whose client's constitutional rights were being infringed. This issue was not even raised in Appellant's motion for new trial. If those present in the room at sentencing, who could see and hear the words and the intonation and the body language, thought the trial judge was punishing Appellant's exercise of constitutional rights, one would think that defense counsel at a minimum, and perhaps also counsel for the State, would raise the issue immediately. One would hope that defense counsel would not stand idly by in the hopes of turning error into an appeal issue and securing resentencing before a more favorable judge. *Cf. Calloway v. State,* 37 So. 3d 891, 896-97 (Fla. 1st DCA) (refusing to promote "bizarre incentive" where defense counsel's failure to object to erroneous jury instruction is rewarded with a new trial), *review denied,* 51 So. 3d 1154 (Fla. 2010). I would not hold that counsel is required to expressly assert that the defendant is exercising constitutional rights, or to object to seemingly improper sentencing comments, to preserve the issue for appeal. I merely observe that in some cases it would be very helpful in distinguishing between character issues and the assertion of constitutional rights, and

often might eliminate this issue on appeal. In this case the lack of objection means the trial judge was given no opportunity to address the issues we now address on appeal.

We should not interpret the trial judge's comments as rigidly as if we were interpreting a contract or statute. The flaw in such an interpretive approach is that it places too much grammatical and legal significance on extemporaneous oral comments. The hearing transcript is not a polished legal contract or a thoroughly-vetted statutory provision. Nevertheless, the dissenting opinions argue that the use of "still" in "You still fail to take any responsibility for your actions" can only be a present-crime reference to a refusal to admit guilt. To the contrary, the more plausible interpretation *in context* is that the trial judge used the word "still" to reflect the truth that despite a lengthy felony history and the accompanying unavoidable knowledge that he could not legally be in possession of a gun, Appellant had just been convicted of exactly that crime and was continuing a general life of crime. In other words, the "still" was a temporal link between Appellant's *prior* criminal history and the *new* conviction; it did not punish Appellant for maintaining his innocence.

The dissents further interpret the trial judge's next two comments as if they presumptively violated the constitution. The trial judge spoke two phrases in succession, separated by a comma: "your history here [*comma*]" followed by "your failure to take any responsibility." In their view, the comma between the phrases means the two phrases must be interpreted as referring to two different things: "your history here" referring to past convictions, thus *negating* any possibility that the following phrase, "your failure to take any responsibility," could refer to the same thing. To the contrary, we cannot assume the judge intended two different things any more than we can assume he intended to violate Appellant's constitutional rights. In context, it is more reasonable to conclude that the judge was repeating or rephrasing the same consideration for emphasis or for further explanation, as in "[Y]our history here [referring to the PSI and CPC scoresheet] shows me you are not shouldering the responsibility of living a life free of crime." The trial judge had just reviewed Appellant's prior felonies, and the "responsibility" comment was made in light of Appellant's obvious knowledge of his status as a convicted felon.

This was a proper sentencing consideration. *See* §§ 921.002(1)(d), 921.231(1)(m), Fla. Stat. It was a single, brief, passing comment not tied to any attempt to extract a confession in exchange for a lighter sentence. It did not punish Appellant for asserting a constitutional right in connection with the crime of conviction. We should not be so eager to assume the worst of a sentencing judge.

## III. Conclusion

In closing, I add that this issue arises in a context where it can occur unobserved. Judges can rely on improper factors in sentencing, and hide that fact by not saying so out loud. Of course, the issue would not arise if sentencing judges would not say "responsibility" or "remorse" without also elaborating in detail that they are not improperly relying on a defendant's exercising constitutional rights in connection with the crime of conviction. But a sentence could be improper without the problematic words' having been spoken; and a sentence can be proper even when the words are spoken. Further, a judicial "explanation" or "disclaimer" of comments that otherwise clearly punish a defendant's exercise of constitutional rights may be insufficient to cure a constitutional violation. Sentencing judges must consider their sentencing comments thoughtfully and with every intention of avoiding a constitutional violation. Counsel *should* make it very clear to sentencing judges where appropriate that defendants are exercising their constitutional rights; and if necessary, object and request clarification if sentencing remarks appear to be going astray.

LEWIS, J., concurring in part and dissenting in part.

I concur in the majority's affirmance of Appellant's conviction. I respectfully dissent, however, from the majority's affirmance of Appellant's sentence. Unlike the majority, I see no need or justifiable basis to recede from our well-established case law holding that a trial court may not consider a defendant's failure to take responsibility or to show remorse when imposing a sentence and to create conflict with other Florida appellate courts on this issue. Because the trial court expressly stated that it considered Appellant's failure to take responsibility when sentencing him,

31

Appellant's sentence should be vacated and the case remanded for resentencing before a different judge.

While I agree that a contextual analysis is appropriate in determining whether a trial court considered an improper sentencing factor, such an analysis in this case can lead only to the conclusion that such a factor was considered. It is undisputed that the trial court placed a great deal of emphasis on Appellant's violent history, which it was clearly permitted to do. However, what the trial court said after discussing Appellant's history should be our main focus in this case, especially given the fact that Appellant stated during the sentencing hearing, "If I did anything wrong, or said anything that's inappropriate, I would apologize. Right now . . . I would be asking for leniency, but I did nothing wrong. I am not guilty of the charge that I'm accused of. I am innocent." The trial court later stated:

> *You still fail to take any responsibility for your actions. And considering* your history here, *your failure to take any responsibility,* the nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years in the Department of Corrections, which is the statutory maximum.

(Emphasis added).

It is abundantly clear based on the words the court spoke that it considered Appellant's failure to take responsibility in sentencing him. To find otherwise ignores not only the court's words but also this Court's well-established case law on the issue. We have held that "[a] lack of remorse *or* a failure to accept responsibility may not be considered by the trial court when fashioning an appropriate sentence." *Dumas v. State*, 134 So. 3d 1048, 1048 (Fla. 1st DCA 2013) (emphasis added); *see also Macan v. State*, 179 So. 3d 551, 553 (Fla. 1st DCA 2015) ("Although the mere mention of a defendant's 'claim of innocence or failure to take responsibility during a sentencing hearing' will not necessarily rise to the level of fundamental error . . . where a 'statement made by the trial court can reasonably be read only as conditioning the sentence, at least in part, upon appellant's claim of innocence,' fundamental error occurs." (citation omitted)); *Hayes v. State*, 150 So. 3d 249, 251 (Fla. 1st DCA 2014) ("[I]t is well settled that a trial

court's remarks during sentencing which show reliance on constitutionally impermissible factors to support the severity of the sentence can constitute a denial of the defendant's due process rights and thus constitute fundamental error which may be raised for the first time on appeal."); *Adkison v. State*, 133 So. 3d 607, 607 (Fla. 1st DCA 2014) (affirming the appellant's convictions, but vacating his sentences and remanding for resentencing before a different judge because the trial court's oral pronouncement "'can be reasonably read only as conditioning the sentence, at least in part, on Appellant's lack of remorse and claim of innocence, which is a violation of [his] due process rights'" (citation omitted)). Other Florida courts have similarly held. *See James v. State*, 4D18-2151, 2019 WL 719141, at \*3 (Fla. 4th DCA Feb. 20, 2019) (explaining that while a sentencing court has wide discretion as to the factors it may consider in imposing a sentence, it is constitutionally impermissible for it to consider the fact that a defendant continues to maintain his innocence and is unwilling to admit guilt and reversing the appellant's sentence where the trial court stated during sentencing that it did not sound like the appellant had taken any responsibility and noted that defense counsel represented on the appellant's behalf that he did not commit the crime to which he pled); *Johnson v. State*, 948 So. 2d 1014, 1017 (Fla. 3d DCA 2007) (holding that a criminal defendant has the right to maintain his or her innocence and that a trial court may not hold a defendant's protestation of innocence against the defendant).

It is true that this Court in *Hayes* declined to hold that any mention by a sentencing judge of a defendant's claim of innocence or failure to take responsibility during a sentencing hearing automatically renders the sentence an infringement of the defendant's constitutional right to maintain one's innocence. 150 So. 3d at 252. However, we also explained:

> The trial court specifically stated that Appellant **was not** being punished for maintaining his innocence, in response to a suggestion by defense counsel that such punishment would be illegal. Although the trial court surmised that Appellant maintained his innocence for appellate reasons and the possibility of future re-trials, and observed that Appellant had not shown any remorse

or taken responsibility for 'what he has done' over his lengthy criminal history, the court discounted these factors as affecting the sentence by stating immediately thereafter: "But be that as it may, Mr. Hayes is an habitual felony offender."   The transcript of the sentencing hearing in this case does not give rise to a presumption that the sentence was imposed as a punishment for Appellant's exercise of his constitutional rights.

*Id.* (emphasis in original).

Had the trial court in this case merely said in passing as it was discussing Appellant's violent history that "you still fail to take responsibility for your actions" and proceeded to expressly base the sentence on Appellant's history, the nature of the crime, and the fact that it involved a firearm, *Hayes* might support affirmance.  In that scenario, a contextual analysis could lead to the conclusion that the court did not base the sentence on an improper sentencing consideration.  Yet, that is not the situation that we have before us.  Not only did the trial court make the "failure to take responsibility" comment, it then immediately included that factor in the list of factors it considered in sentencing Appellant.  When looking at the list in context, it is telling that Appellant's failure to take responsibility was not the last factor mentioned.  Indeed, it was the second factor listed, preceded only by a consideration of Appellant's criminal history.  This is not surprising given the court's strong focus on Appellant's history.

Moreover, the trial court's statement about taking responsibility was not merely a comment on Appellant's life-long history of crime in general and gun crimes in particular.  The trial court instead listed Appellant's failure to take responsibility *in addition to* his criminal history, the nature of the crime, and the fact that it involved a firearm.  Judge Kelsey, in choosing not to construe the trial court's language as if she were analyzing a statute or written contract, believes that looking at the trial court's stated reasons for the sentence places too much grammatical and legal significance on extemporaneous oral comments given that the hearing transcript is not a polished legal contract or thoroughly-vetted statutory provision.  This, in my opinion, does

nothing more than show how strained such an interpretation of the trial court's statements is. Contrary to Judge Kelsey's claim that we cannot assume that the trial court intended two different things when it stated, "your history here, your failure to take any responsibility," we do not have to assume anything in this case. The trial court's words tell us all we need to know. We are not in the business of removing punctuation marks from trial transcripts in order to construe the oral comments made by trial courts. Nor are we in the business of saying that a trial court did not mean what it actually said.

Furthermore, to conclude that the responsibility comment was made in light of Appellant's obvious knowledge of his status as a convicted felon attributes to the trial court an intent that is completely at odds with the intent reflected by the court's own words. As for the contention that the trial court's responsibility comment had nothing to do with the crime of conviction, the trial court made the statement "[y]ou *still* fail to take any responsibility for your actions." The use of the word "still" can only reasonably be construed to mean that the court considered Appellant's present failure to take responsibility. This is particularly true given Appellant's claim of innocence during the sentencing hearing.

Because the trial court's own words in this case leave no doubt that it improperly considered Appellant's failure to take responsibility, especially in light of Appellant's claim of innocence, Appellant's sentence should be vacated and the case remanded for resentencing before a different judge. I concur, however, in the decision to certify a question to the Florida Supreme Court given the important issues this case presents.

WETHERELL, J., concurring in part and dissenting in part.

I concur in the decision to affirm the denial of Appellant's motion for new trial, but I respectfully dissent from the decision to affirm his sentence.

I agree with Judge Kelsey that a contextual analysis is required when evaluating whether a defendant's sentence was

impermissibly based on his protestation of innocence.[1]  However, I come to a different conclusion than Judge Kelsey in this case because, like Judges Lewis and Makar, I see no way to interpret the trial judge's comment that Appellant "still fail[s] to take any responsibility for [his] actions" as anything other than a direct rebuke of Appellant for continuing to protest his innocence at the sentencing hearing in the face of the evidence presented at trial and the judge's view that the jury "got it right."

Because the context shows that the trial judge's comment about Appellant's failure to take responsibility was a direct reference to his protestation of innocence and because Appellant's failure to take responsibility was one of the factors specifically enumerated by the judge as a basis for Appellant's sentence, it follows that Appellant's punishment in this case was based at least in part on his protestation of innocence.  This is a due process violation.  *See Holton v. State*, 573 So. 2d 284, 292 (Fla. 1990) ("[D]ue process guarantees an individual the right to maintain innocence even when faced with evidence of overwhelming guilt. A trial court violates due process by using a protestation of innocence against a defendant.").  Accordingly, resentencing is required.

MAKAR, J., concurring in part, dissenting in part.

Overturning thirty years of precedent and creating conflict with all other Florida appellate courts, a bare majority of this

---

[1] I also agree with Judge Kelsey that Florida Supreme Court precedent precludes this court from adopting the new rule embraced by the majority opinion, but because reasonable judges can (and obviously do) disagree on this point, I join in the certification of a question to the Florida Supreme Court in order to give the Court an opportunity to clarify (or reconsider) its case law on the issue and decide whether all of the district courts prior to this case had unjustifiably expanded (or merely followed) the Court's precedent by holding that the trial court may not base a defendant's sentence on his protestation of innocence, lack of remorse, failure to take responsibility, or the like.

Court enfeebles what for decades has been an easily administered bright-line sentencing rule for Florida judges: do not punish—or appear to punish—a defendant *who maintains his innocence* for a perceived lack of remorse or the failure to take responsibility or accept guilt for the crime proven. Resentencing is required if a trial judge's comments can reasonably appear to suggest that a criminal sentence was based, even in part, on these impermissible factors. This prudent, efficient and battle-tested rule has proven its mettle, yet it is discarded today for no good reason.

This constitutionally-derived rule—applied by our supreme court and every district court in Florida for a generation—has two primary justifications: due process and judicial administration. The former's focus is prophylactic, according space for a defendant's exercise of his constitutional rights to a fair trial (including sentencing) and maintaining innocence or silence. *See* U.S. Const. amends. V, VI, & XIV; art. I, §§ 9, 16(a), & 22, Fla. Const.; *see Norvil v. State*, 191 So. 3d 406, 410 (Fla. 2016) ("bright line rule" adopted to "preserve a defendant's due process rights during sentencing."); *see generally* MICHAEL PROEVE & STEVEN TUDOR, REMORSE: PSYCHOLOGICAL AND JURISPRUDENTIAL PERSPECTIVES 154 (2010) ("to treat an absence of remorse as an aggravating factor will effectively put unacceptable pressure on an accused person to plead guilty for fear that her plea of not guilty will (if the verdict is 'guilty') be treated as evidence of a lack of remorse and thereby attract further punishment. Such pressure is inconsistent with respect for the right to plead not guilty and the right not to incriminate oneself, which all accused persons enjoy, regardless of whether they believe themselves to be guilty or not and regardless of whether they are remorseful or not.").

The latter's focus is on maintaining a bright-line that prohibits the use of impermissible criteria in the sentencing process, thereby minimizing the role of appellate courts in divining trial judges' motivations by parsing what they say at sentencing. *See, e.g.*, *Norvil*, 191 So. 3d at 410 (implementing "bright line rule for sentencing purposes" that a trial court may not consider an impermissible sentencing factor). To date, Florida's bright-line rule has seemed to work; no hue and cry has rung out statewide to alter the status quo. Indeed, the State, in its initial brief, made no argument that the time had come to change course; it admitted

error, but argued it was neither fundamental nor harmful. Only a subset of this Court was unhappy with Florida's bright line rule, resulting in this en banc proceeding—not to bring about uniformity in our cases, which we currently have—but to change the status quo markedly and unjustifiably.

To begin, let's set forth the incontestable. In Florida, an impermissible sentencing factor is a defendant's perceived failure to show remorse or accept responsibility or guilt for the crime proven: no statutory authority permits it, and Florida appellate courts uniformly hold it is an improper consideration, even in part, during the sentencing phase of a non-capital case. *See, e.g.*, *Jackson v. State,* 39 So.3d 427, 428 (Fla. 1st DCA 2010) (fundamental error occurs where a trial court's statement "can reasonably be read only as conditioning the sentence, at least in part, upon appellant's claim of innocence"); *see also Torres v. State*, 124 So. 3d 439, 441 (Fla. 1st DCA 2013) ("A sentence should be vacated where a trial judge's comments '"could reasonably be construed to suggest that the trial judge based [the] sentence, at least in part,"' on a constitutionally impermissible factor.") (citation omitted).

As our supreme court said almost thirty years ago, due process is violated where a trial court uses "a protestation of innocence against a defendant," *Holton v. State*, 573 So. 2d 284, 292 (Fla. 1990), because "due process guarantees an individual the right to maintain innocence *even when faced with evidence of overwhelming guilt.*" *Id.* (emphasis added); *see also Williams v. State*, 89 So. 3d 304, 305 (Fla. 1st DCA 2012) (reversing for resentencing where trial court comments "can reasonably be read as conditioning appellant's sentence, at least in part, on the veracity of his testimony.") (citing *Holton*). Under Florida's bright-line sentencing rule, comments as to lack of remorse or failure to accept responsibility for the crime charged are handled like other impermissible sentencing factors (such as race or religion), which generally require resentencing. *Torres*, 124 So. 3d at 442. Dozens of cases from this District, and far more statewide, could be string-cited for these foundational propositions. A recent smattering from each of our sibling districts demonstrates this point. *Strong v. State*, 44 Fla. L. Weekly D184 (Fla. 5th DCA Jan. 4, 2019) (holding that "the trial judge fundamentally erred when she injected

[defendant's] failure to show remorse as a factor in sentencing" requiring a "remand for resentencing before a different judge"); *Lawton v. State*, 207 So. 3d 359, 361 (Fla. 3d DCA 2016) ("The trial court's consideration of remorse . . . constituted an impermissible factor in imposing its sentence" such that "consideration of [defendant's] lack of remorse constituted fundamental error"); *Pehlke v. State*, 189 So. 3d 1036, 1037 (Fla. 2d DCA 2016) ("The State concedes that it was fundamental error for the sentencing court to consider [defendant's] failure to demonstrate remorse for his actions and that the sentence must thus be reversed."); *Davis v. State*, 149 So. 3d 1158, 1160 (Fla. 4th DCA 2014) ("A trial court's consideration of a defendant's lack of remorse in imposing its sentence is fundamental error.").

Applying the rule here, a plain reading of the sentencing transcript shows that the trial judge reasonably appears to have imposed the sentence, in part, on Davis's failure to take responsibility for the crime proved (possession of a firearm by a felon); indeed, a reader of the transcript could easily conclude that the trial judge imposed the maximum penalty permissible against Davis because of Davis's multiple protestations of innocence at sentencing ("I am not guilty of the charge that I'm accused of. I am innocent."). This point is obvious in the trial judge's stated rationale, which *immediately followed* Davis's declarations of innocence and occurred during the ultimate pronouncement of sentence:

> *You still fail to take any responsibility for your actions.* And considering your history here, *your failure to take any responsibility*, the nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years in the Department of Corrections, which is the statutory maximum.

(Emphasis added). Even the State reads the transcript as being problematic, agreeing that the italicized comments were "improper," but it claims that the trial judge's "main point of concern" was Davis's criminal history and not his lack of remorse.

But who's to say that's the case? The emphasized portions make clear that Davis's criminal history ("considering your

history") *and* Davis's *ongoing* lack of remorse ("[y]ou *still* fail to take any responsibility for your actions") (emphasis added) were separate factors that contributed to the ultimate sentence imposed. Davis had an extensive criminal history, which is a statutory factor in sentencing, *see* § 921.002(1)(d), Fla. Stat. (2019) ("The severity of the sentence increases with the length and nature of the offender's prior record."), but the trial judge emphasized *twice*—at the moment of imposition of the sentence—that Davis's refusal to accept responsibility (which is *not* a statutory sentencing factor) was an independent animating factor in the maximum sentence he imposed. *See Norvil*, 191 So. 3d at 409 (Fla. 2016) (trial judge commented on impermissible factor "[i]mmediately before pronouncing sentence"). Moreover, the trial court's statement at sentencing that he "had heard the evidence" and that "quite frankly I think [the jury] got it right," combined with his insistence—after Davis adamantly maintained his innocence—that Davis ought to have accepted responsibility, is reasonably construed to impugn Davis for maintaining silence and not admitting guilt. Textually, contextually, or even atextually, what the trial judge said can reasonably be seen as relying, at least in part, on an impermissible factor in sentencing Davis.

To conclude that there was nothing wrong with the judge's comments and that "nothing in the record" supports "even a hint" that sentencing was based on an impermissible factor ignores that the trial judge scolded Davis for his failure to take responsibility in virtually the same breath with Davis maintaining his innocence; indeed, the majority opinion scarcely mentions Davis's vocal claims of innocence at the sentencing hearing. Why would Davis accept responsibility when he was adamantly maintaining his innocence? Wouldn't that be oxymoronic? Isn't maintaining innocence the antithesis of accepting blame? And isn't "failure to take responsibility" and "lack of remorse" potentially seen as code phrases for or synonymous with "failure to accept guilt" under these circumstances? It makes for bad optics to uphold wayward sentencing comments of these kind, which can reasonably appear to affect a criminal defendant's constitutional right to maintain innocence and a jury trial. And it strains plausibility to conclude that the trial judge's statements are "fairly interpreted" *only* as a "comment" on or "observation" of Davis's prior criminal history. That's quite a stretch, particularly when many members of this

Court have no difficulty interpreting them quite differently. Characterizing the trial judge's statements as "extemporaneous oral comments" without "legal significance"—as if they were mere gossamer—overlooks that they were uttered while imposing the maximum sentence possible. What's more, to turn on a dime and imbue these very same comments with deep legal meaning— interpreting them tautologically as commenting exclusively on Davis's criminal history—seems incongruous.

Even if the trial judge's comments had dual motives, it is pure guesswork to say what the trial judge's "primary" motivation or his "main point of concern" was at sentencing in this case. The elegance of Florida's bright-line rule is that it minimizes the vagaries of divining on appeal what is unknowable, e.g., what weight did the trial judge place on the impermissible factor(s) and was it enough to be prejudicial? If a trial judge has multiple motives—one of which is impermissible—how is an appellate court to channel a trial judge's thoughts to figure out which prevails? It's akin to unscrambling a scrambled egg. Plus, what if the trial judge said:

> *You have committed an offense that is inconsistent with your Catholic upbringing.* And considering your criminal history here, *your failure to conform to your beliefs,* the nature of the crime, the fact that it involves a firearm, the Court will sentence you to 15 years in the Department of Corrections, which is the statutory maximum.

Is there any doubt that resentencing would be required due to the reference to the impermissible factor of religion or perceived lack of religious adherence, even though the trial judge also mentioned the defendant's "criminal history" in imposing the statutory maximum? *Torres*, 124 So. 3d at 440-41 (resentencing required where trial judge said during sentencing that "You're a good Catholic fellow as I am. That's not the way Catholic people—that's not the way anybody with morals should do anything.") (italics removed). No sliding-scale of "impermissibility" exists to distinguish between improper comments that reasonably appear to suggest reliance on religion and those based on the right to maintain innocence and not accept guilty or responsibility; both

are impermissible and neither arises in plea deals, which have no apparent relevance to the matter at hand.[1]

Simply said, Florida's venerable bright-line sentencing rule—which is readily applied by trial and appellate judges—isn't broken and doesn't need an unprompted, precipitous judicial fix.

So why has a majority of this Court decided to abandon Florida's bright-line test, overturn dozens of our precedents, and create conflict with every other district (and probably our supreme court)? Why change course and impose a new federal-esque

---

[1] The majority's discussion of plea bargaining, which is somewhat mystifying in a non-plea bargain case, actually undermines its position. A defendant who chooses not to maintain his innocence by entering a plea bargain does so voluntarily, giving up constitutional rights in the process. Davis, however, chose to exercise his right to a jury trial and to maintain his innocence through trial and sentencing, giving up no constitutional rights. Even if he had rejected a plea deal as the majority seems to hint (the record does not speak to one), how could that possibly matter thereafter? His continued exercise of his constitutional rights is all that matters. It can't be that a trial judge has greater latitude to comment or act upon a lack of remorse or refusal to accept guilt where a plea bargain is rejected; indeed, the specter of vindictive sentencing looms in such cases. *See, e.g.*, *Cavallaro v. State*, 647 So. 2d 1006, 1006–07 (Fla. 3d DCA 1994) ("party's decision to go to trial rather than accept a plea bargain is not punishable by the imposition of a harsher sentence as to do so would impinge on the constitutional right to trial by jury."); *Pasley v. State*, 559 So. 2d 1167, 1168 (Fla. 4th DCA 1990) ("No extended citation of authority is necessary to show that the court may not punish a defendant for going to trial as opposed to 'pleading out.'"); *see generally* Kurtis A. Kemper, Propriety of Sentencing Judge's Imposition of Harsher Sentence than Offered in Connection with Plea Bargain Rejected or Withdrawn Plea by Defendant—State Cases, 11 A.L.R.6th 237 (2019) (collecting and analyzing state cases where "a judge improperly imposed a sentence that was harsher than that offered in a plea bargain that was rejected or withdrawn by the defendant.").

sentencing policy that empowers trial judges to vocalize and rely upon a defendant's failure to accept responsibility or lack of remorse for sentencing purposes, even in cases—like this one—where a defendant adamantly maintains his innocence at sentencing? No one has asked us to upset the apple cart and jettison the well-established and non-controversial approach taken by every court in this state in the modern era. What's changed to justify this dramatic shift, one that now permits the use of what has been an impermissible sentencing criterion in Florida thereby undermining a defendant's constitutional right to maintain his innocence? One has to search hard for a justifiable rationale. At best, the central thesis of Judge Winsor's opinion, that Florida appellate courts have strayed from original sentencing principles over the past thirty years, is itself far off-base because it principally relies on a false comparison between *Florida*'s sentencing laws and *federal* and *other states'* sentencing laws, the latter having little to do with sentencing standards and principles in Florida, whose sentencing statute does not allow punishment for a defendant's lack of remorse. To adopt his change in sentencing policy requires judicial rewriting of Florida's sentencing statute, jettisoning well-established caselaw, and importing the substantive law of federal/other states' standards into Florida's sentencing process. For what end? To permit judicial comment on and punishment for a lack of remorse/responsibility, which we—as a court—have no authority to adopt via judicial fiat; only the legislature can make such an epic shift in Florida sentencing policy.

Paradoxically, the majority embraces a patchwork of primarily federal cases with a hodgepodge of state cases supporting its view as if Florida courts should reflexively deem them as superior in kind to what our legislature and state judiciary have thoughtfully developed and implemented over the past decades. But, what principle of state judicial power says, *"Fed is Best—Chuck State Law,"* where the Supremacy Clause is not in play? State sovereignty is undermined when state courts diminish or discount their own laws by mechanically "lockstepping" with federal precedent, even more so when the federal and state laws are textually different as is the case here. *See* JEFFREY S. SUTTON, 51 IMPERFECT SOLUTIONS: STATE AND THE MAKING OF AMERICAN CONSTITUTIONAL LAW 173-90 (Oxford University Press 2018)

("There will never be a healthy 'discourse' between state and federal judges about the meaning of core guarantees in our American constitutions if the state judges merely take sides on the federal debates and federal authorities, as opposed to marshalling the distinct state texts and histories and drawing their own conclusions from them.") (footnote omitted). The same principle is true as to other state's laws; why follow them rather than our organic laws in Florida.

Plus, who's to say that Florida's prophylactic bright-line rule isn't the superior approach, not only to the federal cases but other states' sentencing laws as well? Isn't it better, at the margin, to ensure the protection of due process and the constitutional rights to jury trial and maintaining innocence/silence with a simple administrative rule rather than banish the rule's prophylactic purpose to the trash heap, increasing the risk that impermissible sentencing factors are considered? Keep in mind that Florida's bright-line rule only says that resentencing is needed where a trial judge's comments *reasonably appear* to suggest consideration of an impermissible sentencing factor; the rule is not a "blanket, judge-made" bludgeon that always requires resentencing. We, as a court, have already plowed this ground and held that resentencing is not required simply because a trial court mentions such a factor. *Hayes v. State*, 150 So. 3d 249, 252 (Fla. 1st DCA 2014) (trial court's comments, coupled with it "specifically stat[ing] that Appellant ***was not*** being punished for maintaining his innocence," held to not establish grounds for resentencing). Laid bare, nothing justifies departure from precedent other than the will of the majority to impose other jurisdictions' substantive sentencing laws on a state system whose legislature has chosen not to do so and whose judiciary statewide has been in uniform equilibrium on the topic for decades.

Like most legal doctrines, Florida's bright-line rule has exceptions, the primary one being where the Legislature has specifically permitted consideration of remorse. For example, the Florida Legislature has determined that a trial judge may decide that remorse has been sufficiently shown and that leniency is warranted in limited circumstances. *See, e.g.*, § 921.0026(2)(j), Fla. Stat. (2019) (mitigation is permissible where the "offense was committed in an unsophisticated manner and was an isolated

44

incident *for which the defendant has shown remorse*.") (emphasis added). Thus, where a defendant seeks leniency and puts the authenticity of his remorse into question, the "trial court may properly consider whether a defendant is remorseful when determining whether or not to *mitigate* a sentence."). *Catledge v. State*, 255 So. 3d 937, 940-41 (Fla. 1st DCA 2018) (emphasis added); *see also State v. Sachs*, 526 So. 2d 48, 51 (Fla. 1988) ("Although constitutional considerations generally mean that lack of remorse cannot constitute a valid reason for an upward departure, we conclude that clear and convincing evidence of actual remorse also may constitute a valid reason for a downward departure.") (footnote omitted). In *Catledge*, the defendant apologized and sought mitigation of his sentence, thereby subjecting his professed remorse to judicial scrutiny. In upholding the trial judge's comments as to defendant's lack of remorse, it was noted that "there is a critical distinction between instances where a sentencing court *improperly relies on* a defendant's lack of remorse *in fashioning its sentence*, and instances where a sentencing court *properly relies on* a defendant's lack of remorse *in the context of mitigation.*" *Id.* at 941. *See also Shepard v. State*, 227 So. 3d 746, 749 (Fla. 1st DCA 2017) ("While remorse and an admission of guilt may be grounds for mitigation of a sentence, the lack of these factors cannot be used to increase a defendant's sentence and such reliance violates the defendant's due process rights."), *approved on other grounds*, 259 So. 3d 701 (Fla. 2018); *Lawton*, 207 So. 3d 359 at 361 ("Consideration of remorse . . . is appropriate where a defendant injects rehabilitation into the case as remorse is part of rehabilitation."); *Ritter v. State*, 885 So. 2d 413, 414 (Fla. 1st DCA 2004) ("Although remorse and an admission of guilt may be grounds for mitigation of sentence, the opposite is not true. . . . Reliance on these impermissible factors violates the defendant's due process rights.") (citation omitted).

The exception that allows remorse to be considered in mitigation of a sentence does not swallow or undermine the rule. Statutory and sentencing asymmetry is permissible. Just because the legislature says remorse may be used in doling out leniency in some situations doesn't mean the opposite is condoned, i.e., that a lack of remorse or failure to accept guilt is a permissible sentencing factor. Quite the opposite. The primary focus of Florida's Criminal Punishment Code is on punishment. *See* § 921.002, Fla. Stat.

45

(2019) ("The primary purpose of sentencing is to punish the offender. Rehabilitation is a desired goal of the criminal justice system but is subordinate to the goal of punishment."). It does not include a lack of remorse as a basis for increased punishment; and its inclusion is a job best left to the Legislature. *Id*. § 921.002(1) ("The provision of *criminal penalties and of limitations upon the application of such penalties* is a matter of predominantly substantive law and, as such, *is a matter properly addressed by the Legislature*.") (emphasis added).

To affirm this principle of judicial restraint and statutory construction, one needs to look no further than our supreme court's decision in *Norvil*, which held that Florida's criminal punishment code's inclusion of *prior* arrests as a factor to consider in imposition of sentence precluded consideration of *subsequent* arrests because "if the Legislature had intended to include subsequent arrests and their related charges as permissible sentencing factors, it would have done so." 191 So. 3d at 409. The legislature has included remorse only as a basis for showing leniency, so where do we get the authority to rewrite the criminal punishment code to make it a permissible factor for trial judges to voice and bring into play other than in that limited context? Sentencing on objective factors is difficult enough without judicially injecting a subjective, non-statutory, and emotion-laden factor into the process; persons found guilty of a crime can be sentenced on what they did and the harm they caused to victims (objective factors) versus the perceived lack of an emotion or affect at sentencing (subjective factor). If Florida's Legislature wants to adopt a laxer approach—and gravitate toward a sentencing standard some federal and state courts use— that is its sole prerogative under separation of powers principles; we have no business tinkering in this field and imposing our policy preferences when the Legislature has explicitly said this is its turf alone.

Beyond confusion within the District and bewilderment beyond, the majority's newfound sentencing regime muddles the line of what's acceptable judicial commentary. The majority's explicit holding is "that lack of remorse and refusal to accept responsibility can be valid sentencing considerations when sentencing within the statutory range," which presumably means that trial judges may now actively comment on an innocence-

professing defendant's perceived refusal to accept responsibility for the crime charged and proven without fear of reversal. Phrases such as "You fail to take responsibility" or "You fail to show remorse" are given the green light even though they can easily be seen as rebuking defendants who have exercised their constitutional right "to maintain innocence even when faced with evidence of overwhelming guilt." *Holton*, 573 So. 2d at 292. Unclear is whether any remedy remains for other than the most obvious and reprehensible acts, such as where a trial judge openly disparages and punishes a defendant for maintaining innocence and exercising the right to a jury trial (aka actual vindictiveness). The answer, apparently, is a new bright-line test: only the most egregious or palpable constitutional transgressions warrant relief. This divergence from precedent is unwise and unnecessary where the apparent effect of doing so is to normalize and thereby validate sentencing errors arising from wayward comments about a defendant's failure to show remorse, guilt, or accept responsibility, particularly in cases—like this one—where defendants profess their innocence at sentencing.

No one advocates for knee-jerk, buzz-word based reversals—no cited case or opinion expresses that viewpoint. Yet the majority fashions a straw man, saying that it "can no longer embrace the blanket, judge-made rule" that a lack of remorse or a failure to accept responsibility may not be considered at sentencing, citing *Dumas v. State*, 134 So. 3d 1048, 1048 (Fla. 1st DCA 2013). Begging one's pardon, but no contemporary Florida court has said that trial courts may not consider a lack of remorse/responsibility in sentencing; it is permitted where a defendant seeks leniency and where authorized by statute. And Florida's bright line rule only says that resentencing is necessary if comments by a trial judge can *reasonably appear to suggest* that imposition of sentence was based, if only in part, on maintaining innocence or exercising a constitutional right. *See, e.g., Dumas*, 134 So. 3d at 1048) ("The court's statement can reasonably be read only as conditioning the sentence, at least in part, on [Dumas's] lack of remorse and claim of innocence, which is a violation of [Dumas's] due process rights."). What had been potentially impermissible factors are now presumptively permissible factors in cases where defendants exercise their right to maintain innocence or to remain silent. And the majority's example, that a trial judge can impose a maximum

sentence on an innocence-professing defendant, yet say he'd have shown leniency if the defendant had shown remorse, proves how the new sentencing regime can be used to extract or pressure defendant's to give up these constitutional rights (i.e., if a judge's policy is to require remorse for leniency, even the innocent may feel compelled to capitulate). *See* PROEVE & TUDOR, *supra* at 154; *see, e.g.*, *Green v. State*, 84 So. 3d 1169, 1172 (Fla. 3d DCA 2012) ("When a defendant chooses to remain silent at a sentencing hearing, and the trial court regards this silence as a lack of remorse or a failure to accept responsibility, it causes an impermissible chilling effect upon a defendant's due process rights, and cannot serve as a constitutionally permissible sentencing consideration.").[2]

Weakening and shifting away from Florida's bright-line sentencing rule is also bad judicial policy. We are the branch of government least able to study and decide on our own accord what substantive sentencing policy ought to be as to the complex psycho-social matters at issue. The emotion of remorse and its relatives (such as guilt, regret and shame) are not synonymous and are not fully understood in the legal setting. They are extraordinarily complex human emotions with very different, nuanced meanings and diverse implications including different substantive situations

---

[2] As the Third Districted noted in *Green*:

A defendant would face a Hobson's choice between his right to remain silent (thus maintaining his innocence and preserving, as a practical matter, his appellate rights) and his right to allocution at sentencing. A defendant who chooses silence at sentencing risks the possibility of an increased sentence should the trial court find such silence is evidence of a failure to express remorse or accept responsibility. A defendant who chooses to speak at sentencing and attempts simultaneously to express remorse while maintaining his innocence, does so at the risk that the trial judge will find such expressions of remorse insincere, exposing a defendant to the possibility of a harsher sentence.

84 So. 2d at 1172 (footnote omitted).

(such as those involving different cultures or persons with intellectual impairments, mental disorders, or immaturity) that defy pat or singular legal categorization. Bryan H. Ward, *Sentencing Without Remorse*, 38 LOY. U. CHI. L.J. 131, 134 (2006) (the definitional "issue becomes even more complicated, irrespective of the definition chosen, due to several factors which inherently make it more difficult to assess the presence or absence of remorse: subjectivity, deception, cultural values, developmental limitations, and psychological problems."). Each can be feigned, and thereby defy accurate identification, particularly outside a clinical setting. *See* HANNAH MASLEN, REMORSE, PENAL THEORY AND SENTENCING 8-11 (2017) (distinguishing shame, guilt and regret from remorse and attempting to clarify a definition of remorse to apply in assessing penal theory); PROEVE & TUDOR, *supra* (discussing remorse and its related emotions from a psychological approach); RICHARD WEISMAN, SHOWING REMORSE: LAW AND SOCIAL CONTROL OF EMOTION 131-32 (2014) (observing that "it is the very power of this characterization as remorseful or remorseless to humanize or dehumanize the wrongdoer that casts suspicion on its public expression. . . . we demand from the wrongdoer that it is the stirrings of conscience and not fear of consequences that prompted his or her feelings of self-condemnation.").

Given the problem of accurate identification, the likelihood of mistaking one emotion—or, more importantly, the lack thereof—for another is exceptionally high, making it even more important for judges to avoid the appearance that sentencing is based, even in part, on a perceived lack of remorse or acceptance of responsibility or guilt. As Florida's jurisprudence reflects, the risk of constitutional error is significant if a defendant who exercises his right to maintain his innocence, to deny guilt, or to not testify can be sentenced based on the *appearance* that he has failed to take responsibility or adequately shown remorse, shame or regret for his actions.

These emotions are part of human nature and can play important roles in the criminal justice system, particularly in downward departures at sentencing based on a defendant's perceived shame, regret, and acceptance of guilt. But, they also play a role in the minds of judges and jurors who have been

49

acculturated via the news, popular culture, and the like, as to the role of remorse and its absence. PROEVE & TUDOR, *supra* at 8 ("Remorse is never out of the news for long. Virtually every day a search of the newspapers will yield stories about remorse, especially in the context of crime and law reporting. Often enough, it is the absence of remorse that captures more of the media's attention.").

> A criminal defendant's expressions of remorse or remorselessness play a consequential role in the sentencing process. Whether a defendant receives a more or less severe sentence sometimes depends upon a sentencer's assessment of the credibility of the defendant's allocution of contrition. This observation is not subject to reasonable dispute, although it remains a pointed area of disagreement among scholars whether remorse or remorselessness should be considered at sentencing at all. The lived experience of the courtroom in the United States affirms to criminal defendants every day that judges and juries "expect him to feel [] remorseful, ashamed, apologetic, or reformed." If he does not, and the absence of his contrition is detected by the sentencer, he can expect to suffer the consequences.

Caleb J. Fountain, *Silence and Remorselessness*, 81 ALB. L. REV. 267, 267–68 (2018) (footnotes omitted). The expectation that a criminal defendant must show remorse is culturally ingrained, making Florida's bright-line rule a bulwark of sorts against unconstrained punishment imposed for constitutionally impermissible factors such as the maintenance of innocence or choosing silence. A line of demarcation is necessary, particularly when so little is known about what constitutes *actual* remorse, shame, guilt, sorrow and related concepts.

> The failure of remorse is simply the failure of men to be able to read the innermost thoughts and feelings of other men—an age-old problem which plagues many of mankind's interpersonal relationships. No one really knows what remorse is—and courts certainly don't seem to know it when they see it. Anything that is so intrinsically unknowable cannot fairly be the basis for

extended (or reduced) periods of incarceration in any system of justice.

*See* Ward, *supra*, at 167; *see also* WEISMAN, *supra*, at 132 (noting that because the expression of remorse "can lead to a benefit, we are never fully convinced of its veracity."). Little common ground exists among judges, legal scholars, and psychologists on the definitional parameters of these ostensibly similar words and their utility in the sentencing process. *See* Ward, *supra*, at 131 ("Unfortunately, remorse has proven to be an increasingly ambiguous concept, which state court judges have had a great deal of difficulty applying in any coherent or consistent manner. Rather, reflecting the myriad definitions of remorse, state courts have found a myriad of reasons to find remorse present or absent, many of which are illogical at best."). Given the vagueness and uncertainty that inheres in a system of punishment based on a perceived *lack* of the emotion of remorse, an appellate court should be cautious in toying with the existing balance, and not throw the status quo into question, absent the most compelling reason to do so, which does not exist in this straightforward reliance-on-an-impermissible-factor-at-sentencing case. *See* Rocksheng Zhong, MD, MHS, *Judging Remorse*, 39 N.Y.U. REV. L. & SOC. CHANGE 133, 172 (2015) (stating that "the use of remorse in criminal justice judgments still stands on contested ground, particularly with respect to potential interference with Fifth Amendment rights, the inconsistency with which judges identify and apply remorse in their decisions, and the myriad barriers in legal procedure and life in general (such as mental illness) that can block the expression or observation of remorse.").

All this said, no reason exists to disrupt settled law and instill disorder in our District. What's the point? Under current law, if a trial judge concludes that a defendant's extensive criminal record warrants a lengthy sentence, she may do so and say so in words that do not reasonably appear to be based on an affectless/remorseless defendant who maintains his innocence/silence: our state's trial judiciary has been thoroughly schooled on this topic and errors have infrequently arisen as a result. Trial judges have much discretion to impose stiff sentences based on objective factors for continual offenders, such as Davis, without delving into subjective, impermissible factors, such as a

lack of remorse or failure to accept responsibility, which courts and legal scholars have found problematic, particularly in situations— such as this case—where a defendant maintains his innocence at sentencing. For all these reasons, overturning precedent as to the role of remorse or failure to accept responsibility in sentencing a defendant who maintains his innocence ought to be a subject of legislative inquiry and reform versus a judicially-led campaign. I concur as to the new trial issue.

———————————————

Andy Thomas, Public Defender; Steven L. Seliger and Lori A. Willner, Assistant Public Defenders, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Kaitlin R. Weiss, Assistant Attorney General, Tallahassee, for Appellee.